UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MARGARET L. STUMP,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:24-CV-345 JD

## OPINION AND ORDER

Plaintiff Margaret Stump appeals the denial of her claims for a period of disability and disability insurance benefits under Title II of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

### A. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the

claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### B. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C.  Procedural Background**

Given that this case is procedurally complex, the Court provides a brief background to clarify the scope of review. Ms. Stump filed two separate disability claims under Title II of the Social Security Act. She filed her original claim on August 2, 2018, alleging disability beginning on September 6, 2017. An ALJ denied that claim on December 17, 2019. Ms. Stump appealed, and the case was ultimately remanded by the U.S. District Court for the Northern District of Indiana on February 18, 2022. On remand, the agency issued two more decisions based on the original claim. The first post-remand decision was vacated by the Appeals Council. The second post-remand decision, issued by ALJ Meredith Jacques on May 9, 2024, again denied the original claim. (ALJ's Decision, R. at 414–431) That decision is the one currently before this Court.

While the original claim was still pending on appeal in this Court, Ms. Stump filed a second claim with an onset date of February 22, 2019. On April 27, 2022, a partially favorable decision was issued for the second claim, finding Ms. Stump disabled beginning March 1, 2020. That decision remains in force.

In summary, this appeal concerns only the decision issued on May 9, 2024, by ALJ Meredith Jacques (ALJ's Decision, R. at 414–431), which denied Ms. Stump's original claim for the period September 6, 2017, through February 21, 2019. Ms. Stump did not seek review of the ALJ's decision by the Appeals Council, and the Appeals Council did not otherwise assume jurisdiction. Thus, the ALJ's decision is the final decision of the Commissioner, subject to judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.984 (establishing procedures for federal court remand cases).

**D.  The ALJ's Decision**

In finding that Ms. Stump was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Ms. Stump suffered from the following severe impairments: "left shoulder degenerative joint disease, bilateral rotator cuff repairs, bicipital tenosynovitis, and obesity." (R. at 420.) At step three, the ALJ concluded that Ms. Stump "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*)

At Step 4, the ALJ assessed Ms. Stump's residual functional capacity ("RFC"),[1] finding that "from September 6, 2017 through February 21, 2019," she can

> perform light work[2] . . . except no overhead reaching or lifting overhead bilaterally, and occasional reaching in all other directions with the dominant right upper extremity, frequent reaching in all other directions with the non dominant left upper extremity; frequently handle and finger, bilaterally; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and tolerate occasional exposure to hazards, such as unprotected heights and unguarded moving machinery

(R. at 421.)

Among other things, in fashioning the RFC, the ALJ reviewed the opinions of Dr. Blair Rhode, one of Ms. Stump's treating physicians. On October 3, 2018, Dr. Rhode opined that Ms. Stump had reached maximum medical improvement and required "modified-light duty with an overhead restriction of 5/10 pounds." (R. at 392.) On the same form, he checked off a box with

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

5

"LIGHT WORK (max 20 lbs or less lift/carry; frequent at 10 lbs)." He also circled "RIGHT" for "Modified Above Shoulders," "10 lbs" for "Maximum," and "5 lbs" for "Frequent." (R. at 390.) Here's a clip of the form in question:



Almost four months later, on January 23, 2019, Dr. Rhode completed another form mirroring the prior restrictions, but applying them bilaterally.



The ALJ found Dr. Rhode's opinions persuasive:

> Dr. Rhode's persuasive October 2018 and January 2019 maximum medical improvement restrictions that placed the claimant at modified light work with above shoulder lifting at 10 pounds maximum on the right and five pounds frequently,

6

>   albeit provided without a discussion of Dr. Rhode's own clinical findings [] are consistent with the State Agency medical consultants' prior administrative medical findings and the other clinical evidence discussed within these bullet points.

(R. at 425 (citations to the record omitted).)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that such an individual could not perform Ms. Stump's past relevant work as a physical therapy assistant or baker. The VE testified, however, that there would be other jobs available to the hypothetical person with Ms. Stump's RFC: shipping and receiving weigher, bakery line worker, and laminating machine tender. (R. at 472.) The ALJ accepted the VE's testimony, ultimately finding that Ms. Stump was not disabled. (R. at 428, 430.) In the decision, the ALJ noted that "even if [Ms. Stump] was further limited to no overhead reaching, including no overhead lifting with the bilateral upper extremity, but occasional reaching in all other directions bilaterally, the vocational expert confirmed that [the three jobs] remained." (R. at 428.)

### E.  Discussion

**(1)  Dr. Rhode's Medical Opinion**

Ms. Stump argues that the ALJ failed to build a logical bridge from the evidence to the RFC determination. She contends that the ALJ did not adequately explain how limiting her to light work with no overhead lifting or reaching accounts for Dr. Rhode's medical opinion—which the ALJ found "persuasive"—that she could do "modified light work," which did not involve lifting more than 10 pounds bilaterally and 5 pounds frequently above shoulder level.

"[E]ven under [the] deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th

Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

      The Court agrees with Ms. Stump that the ALJ's decision lacks the necessary logical bridge in her consideration of Dr. Rhode's opinions. The ALJ stated that she found Dr. Rhode's October 2018 and January 2019 "maximum improvement restrictions" to be persuasive (ALJ's Decision, R. at 425). Those restrictions placed Ms. Stump at "modified light work with above shoulder lifting at 10 pounds maximum on the right and five pounds frequently." (*Id*.) Yet the ALJ did not incorporate those limitations into the RFC assessment. Instead, the RFC limits Ms. Stump to light work with no overhead lifting or reaching, but imposes no restriction on lifting above shoulder level.

      The Commissioner argues that the RFC's overhead lifting and reaching limitation is more restrictive than Dr. Rhode's opinion to the extent that he permitted some overhead lifting—up to

8

10 pounds maximum and 5 pounds frequently. However, standing alone, it is less restrictive insofar as Dr. Rhode also limited above-shoulder lifting to those same amounts, a restriction the ALJ expressly found persuasive. The RFC makes no restriction for above shoulders lifting. By failing to address this discrepancy or explain why no above-shoulder lifting limitation was included, the ALJ did not adequately reconcile the RFC with Dr. Rhode's opinion she purported to endorse.

In his argument, the Commissioner ignores the above-shoulder lifting limitation. But unless the Commissioner can show that the lifting requirements of light work are limited to lifting only below shoulder level—which he has not done—he cannot prevail. Moreover, the reaching restrictions in the RFC—"occasional reaching in all other directions with the dominant right upper extremity, frequent reaching in all other directions with the non dominant left upper extremity" (R. at 421)—are not synonymous with lifting. Reaching means "extending the hands and arms in any direction." SSR 85-15p(2)(c). By contrast, under the regulations, lifting is classified as an exertional function, while reaching is nonexertional. *See* SSR 96-8P (S.S.A. July 2, 1996). As such, lifting and reaching cannot be conflated as if they're interchangeable. Thus, even if Ms. Stump retained the ability to reach above shoulder level but not overhead, that distinction does not resolve the inconsistency regarding her ability to lift above shoulder level, as limited by Dr. Rhode's opinion.

The ALJ's hypothetical question to the VE was based on her ultimate RFC determination. The VE testified that jobs existed for a hypothetical individual who could perform light work but could not lift or reach overhead. The hypothetical, however, did not inform the VE that Ms. Stump was limited to lifting no more than 5 pounds frequently or 10 pounds at one time above shoulder level. This omission undermines the reliability of the VE's testimony about jobs in the

9

national economy that Ms. Stump can do. Had the VE been properly informed of the above-shoulder lifting limitation, perhaps the job numbers—or the availability of those jobs altogether—would have been different. "Ordinarily, an ALJ's hypothetical questions to a VE "must include all limitations supported by medical evidence in the record.'" *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) ("In this circuit, 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.'" (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). The ALJ herself recognized that Dr. Rhode imposed both a lifting limitation overhead and above shoulder-level. (*See* R. at 424 ("Accordingly, Dr. Rhode limited the claimant to modified-light work with an overhead restriction of lifting 10 pounds maximum and five pounds frequently on the right."); R. at 425 ("Dr. Rhode's persuasive October 2018 and January 2019 maximum medical improvement restrictions that placed the claimant at modified light work with above shoulder lifting at 10 pounds maximum on the right and five pounds frequently . . . ."); *see also* R. at 426 ("In July 2018, Dr. Garst believed the claimant would ' . . . especially have trouble with lifting above shoulder level.'").) Yet she did not provide the latter limitations to the VE and nothing in her hypothetical or the RFC indicates that the overhead limitation also includes the above-shoulder restrictions. The Court is left to speculate whether this would change the VE's opinion about available jobs, but that's for the VE to opine, not this Court.

Of course, the ALJ need not accept any medical opinion that lacks medical support or is inconsistent with the medical record or other evidence. *See Gibbons v. Saul*, 801 F. App'x 411, 416 (7th Cir. 2020) ("[A]n ALJ is not required to accept opinions contradicted by other medical

evidence and may discount opinions that are inconsistent or fall outside the doctor's expertise." (citations omitted)). Additionally, the ALJ need "only 'minimally articulate[]' her reasoning for the persuasiveness of the medical opinion," *Desotelle v. Kijakazi*, No. 22-1602, 2023 U.S. App. LEXIS 15777, at *4 (7th Cir. June 23, 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)). But given that the RFC is inconsistent with Dr. Rhode's opinion, which the ALJ accepted as persuasive, she should have explained how the evidence led her to conclude that no other exertional limitations needed to be included in the RFC. The Commissioner tries to provide such an explanation by insisting that all other medical providers found that Ms. Stump could perform light work, but the ALJ herself did not supply such a basis for her RFC. As the record stands right now, the Court cannot trace the ALJ's path from the evidence to her conclusion, requiring remand. And since the case is being remanded, the Court need not address Ms. Stump's other arguments, although she may raise them before the ALJ.

### F. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 17, 2025

                                                  /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court